Thank you, Neal. May it please the Court. Appearing on behalf of Appellant Michael Kuckelman and also appearing with me is my law partner, Michael Krabb of the Kuckelman-Torlein-Kirkland Law Firm in Overland Park, Kansas. Your Honor, this case is before the Court today seeking reversal of the trial court granting summary judgment on qualified immunity in this case. This case involved a shooting where the deputy, Deputy Dailey, shot Ms. Arbuckle through the passenger window of a car, fired six shots into the passenger side of the car. He clearly himself was not in any imminent danger when he did that. In this case, the trial court erred in two ways. First, when it found that there was no constitutional violation in the use of deadly force, we believe that there was a Fourth Amendment violation. And second, the Court failed to properly apply the clearly established law in regard to the use of deadly force. Counsel, I want to make sure I correctly understand your argument on the Graham factors. Are you focusing on the second factor in Graham on imminent threat, right? You're not challenging anything else. That's correct. The second factor is the most important, as the case law says. I mean, in the severity of the crime, it's in the record, it establishes they were pursuing Deborah Arbuckle for having the wrong license plate. She had a license plate on her Volkswagen that actually belonged on a Chevy pickup truck. She did flee and elude. And so they had the right, of course, to take her into custody because she drove at 100 miles an hour. She did not pull over and submit when she was attempted to be stopped. But the primary factor here has to be the immediate threat. Did they need to shoot and kill her in order to take her into custody? The third one, the actively resisting or evading, again, she did flee and elude. I don't think there's any dispute about that. So we're really focused on the second prong, which is the most important prong, which is did she present an imminent risk to either an officer or to a member of public? And in this case, she did not. We were at the summary judgment phase. You know, the standard there, we were entitled to all inferences in light most favorable under the Emmett decision. The court should accept plaintiff's allegations unless, for example, in this case, the video was used. Unless it blatantly contradicts the plaintiff's version of the facts. The court didn't choose that phrase blatantly contradicts just by happenstance. Those words have meaning. In this case, there's no way that video blatantly discredits the plaintiff's claim that it was unreasonable to shoot Deborah Arbuckle, to fire six shots into that car. Can I test you a little bit on that? One of the interesting dimensions of this case is on the historical facts, maybe because the video is what it is, the parties don't have a great material dispute about what historically happened. Your account is that Officer Johnson was behind Marrero's vehicle. We can see that, you know, through the video. Now, your adversary says, or you say, I think, that he's behind the car door of Marrero's vehicle, right? He's behind Marrero's vehicle. He's behind Marrero's vehicle. Right. Johnson had made steps to go towards the car door, but by the time of the shooting, he was actually back behind Marrero's squad car. Okay. And we can see that through Daly's body cam. But putting aside the video, on the clearly established prong, how can we possibly say that there is any precedent to have clearly flagged to Officer Daly that when she has, when Ms. Arbuckle has wasted her tires to the rim, that she can go up to 20 miles an hour, we can see that there's not very much space between Ms. Arbuckle's vehicle and Marrero's vehicle. And best scenario for you, Daly doesn't know how far behind Marrero's vehicle Johnson is. All he knows is, presumably, he's within the zone of danger. So, at a minimum, best case scenario for you, it seems to me that there is a broad area, realm, for a reasonable, factual mistake on Daly's part about how dangerous was the ability to go up to 20 miles an hour for Johnson himself? And so why isn't that with, you know, in Smart, you know, for example, Judge McHugh wrote for a majority published opinion that there was a reasonable mistake. And why wasn't it at least a reasonable mistake on Daly's part? Well, first, the court, I mean, the case law is clear that there has to be an imminent risk, not just a theoretical risk. It has to be an imminent risk. And when we look at the facts in this case, over the radio, there have been 31 times that they said no traffic. This was in the wee hours of the morning. So, we know there's not an appreciable risk to the public. There would only be a theoretical. There's no imminent risk to the public. Yeah, we don't care about that. I mean, what happened prior to the, you know, to the three vehicles being parked, I don't know if anybody cares about that. Well, except that if Deborah Arbuckle is able to move that vehicle, one of the things that the officer has to consider is, is she moving the vehicle and is somebody at risk? Is she going to drive into the public? Is she going to drive into Marrero's vehicle and therefore hurt Johnson? Or escape, because there was a gap there. Theoretically, she could have backed out and perhaps moved forward away from them and got out of the collection of patrol vehicles. Right. But we know that 31 times they'd said there's no traffic. So, we know that there's no imminent risk to the public. Now, is there imminent risk to Officer Daley, the one who fired six shots? And by the way, he's the only officer that night, or that morning, that fired any shots. He was perpendicular. He was at 90 degrees, firing through the passenger window. But he's worried about Johnson, not himself. Well, except that he has to have, he has, it's an objective standard and there has to be an inherent risk to Johnson. We know from the video that Daley had made a look over that way, but when he was shooting, he didn't know for sure where Johnson was. Exactly. And, but the way the trial court worded that was that he couldn't rule out that Johnson might be in harm's way. That's not the test. The test is you have to know that someone is an imminent, is at an imminent risk of harm. He didn't know that about Johnson. Your Honor, if it went the other way, if the test was just, well, I can't rule out whether somebody's in harm's way, when you're on a scene, when officers are on a scene like this and they have ten officers, eight officers, whatever are out there, if you can't account for every officer, if an officer can't account for every other officer, they'd be justified to start shooting because I didn't know where my colleagues were. I didn't know where my fellow officers were. I couldn't be certain that every one of them was in a safe place. That's not the test. The test is, objectively, is someone at an imminent risk of harm? At the moment that shots are fired? At the moment of the shooting? Exactly. Because the Rivas case, you'll recall with the pickup truck, which went within inches of an officer, and then he started firing shots. In the Rivas case, the court said it matters the exact moment in time because perhaps in Rivas the officer would have been justified to fire those shots earlier because he was about, he could have been hit by that vehicle. Once the vehicle passed him, all he was doing was shooting into the back or to the side of a vehicle that had missed him. So the opportunity or the presence of imminent risk had passed. So he was no longer at imminent risk. You know, in these cases, it's continuously changing whether to use deadly force or not, depending on the level of imminent risk. But an officer is not justified to say, well, a minute ago, I could have shot the person. He pointed a gun at me. I could have shot him, but he laid it down. Well, you can't still shoot them because a minute ago you could have. Yeah, there's no question about that. But, you know, it seems to be a straw man. You know, he, Daly's not trying to defend the shooting based on the fact that Mr. Arbuckle may get away. He's defending based on the fact of what you just said. He does, there is no way of knowing where Johnson is. All he knows is he is probably within the zone of danger. Because your scenario is he's in back of Barrero's vehicle. Barrero is very close to Arbuckle, and as you point out, they're parallel. Arbuckle and Barrero's vehicle are parallel, and depending on how the wheel is just slightly turned, could easily have clipped the vehicle, could have clipped Johnson, and Johnson may have been behind Barrero's passenger door, for that matter, because he sees him coming. Your scenario is he's approaching the scene. But that takes us to the issue that the video in this case does not blatantly contradict. It's not crystal clear in this case, and that's where the court deviated. Because if it doesn't blatantly contradict, then it's a fact question for the jury. And what is the blatant contradiction that you're saying that does not exist here? Is it that Daly looked over to the left and didn't see anyone in harm's way? Daly Is that a reasonable construction of the video? Right. Because Daly, using his body camera, he had looked that direction, but he wasn't looking that direction when he fired the shots. But it's an issue for the jury because what the trial court did is basically engaged in forensic review of a video, trying to go slide by slide and use terms like faint images, dark shapes, blurs of light, silhouettes. That cannot possibly constitute blatant contradiction of the facts that we put forward. That is a fact question. Those issues can be defended. Daly has the right, of course, to present all that to the jury, bring in an expert, show them slides that could show that Johnson was in harm's way. But again, Daly had to know that at the time, objectively know that somebody was in harm's way. And the court said he couldn't, that there's no way Daly could have ruled out. And we submit that's the reverse of the test. The test is he had to have actual, objective, reasonable belief that someone was in imminent risk of harm. And there's no way he could have done that in this case. Or at least it ought to go to the jury. It shouldn't be up to the trial court to start interpreting video and engaging in forensic analysis of video and coming up to factual conclusions as to what the video says. And, you know, when we see terms like I said, the faint images, dark shapes, silhouettes, blurs of light, that cannot constitute blatantly contradict. The fact that the court put the court seems a reasonable interpretation that there has to be something obvious. It has to be to look at the video and what were the words the court used that no, it would so utterly discredit the record that no reasonable jury could have believed him. That's in the Emmett case. I don't think a video in this case can so utterly discredit the record that no reasonable jury could have believed the plaintiff's version. I think there's a... What exactly, so just to be clear, your version is that Johnson was in back of Guerrero's temple somewhere. Johnson was out of harm's way. I think everybody, I think everyone agrees that Johnson was out of the way. The question was, or the way the court phrased it, was did Daley know when he fired the shots that Johnson was out of the way? And what he, that test really again has to be articulated. The test was articulated that there has to be an objective belief of risk of imminent harm. So the test has to be that Daley had a reasonable objective belief that Johnson was in imminent harm, at risk of imminent harm. Not that he couldn't rule it out. Otherwise, it would just eviscerate that rule because every shooting, police shooting, would be, I don't know how many of my colleagues were there, but I didn't know where they all were so I fired shots because I couldn't be sure everybody was out of harm's way. In regard to the use of deadly force, of course it can only be used according to Rivas and Cordova. Both cases say that only if the reasonable officer believed imminent threat of harm. Looking at the video, when you comply or add to that that the video doesn't blatantly contradict, then under those two cases there has to be a fact question as to whether deadly force should be granted. If Johnson was in back, if we assume that the plaintiff's version is that Johnson was in back of Marrero's vehicle, what is your best precedential opinion that would apply? Well, in this case, the record shows that Johnson did not feel he was at risk of imminent harm. That's in the record. And objectively, when you look at it, Johnson didn't fire a single shot. Remember, no one fired a shot that night. Not even Johnson. Only Daly did. And Daly was clearly out of harm's way when he fired those six shots. So is the answer therein in the case? I'm asking you for a case. I'm sorry, sir. You're asking for a case standing for? My question, and give him 45 seconds, because I think he misunderstood the question, or I've misstated it. Sorry. My question is, if we assume that your account is that Johnson is in back of Marrero's vehicle, and I don't care what's in Johnson's brain because of what you just said. Johnson didn't fire any shots. The question is whether Daly committed a reasonable mistake and whether there's a precedent that would have meant that only a plainly incompetent officer would have made such a boneheaded mistake. So my question is, if Johnson was in back of Marrero's vehicle, and that's your version of events, what is your best precedential opinion that would have alerted Daly to the fact that this was a violation of a clearly established constitutional right? Oh, of course. So that would be both Revis and Cordova. Those two would both stand for that proposition. Revis, you know, the court said, when an officer employs such a level of force that death is nearly certain, he must do so based on more than general dangers posed by reckless driving. Because he's just, so in Revis, he's just trying to prevent him from fleeing. That was the point you made earlier. There wasn't any effort in Revis to protect another officer. No, there wasn't. But here, objectively, there wasn't a basis to protect another officer because there was not an objective belief of imminent risk of harm to Johnson. And without that, then under Revis and Cordova, it's clear you cannot fire into a vehicle just to stop someone from fleeing, which is what would have happened here. They would have been simply shooting Deborah Arbuckle to prevent her from fleeing. And especially when they consider that fleeing with a bumper dragging, she was missing the tire off of her front right. There's no basis under that. I mean, a jury could clearly find that there was no reasonable basis for, objectively, for an officer to fire shots. I understand. Thanks. Okay. Thank you. May it please the Court, David Cooper for Defendant Apolli, Deputy Caleb Daly. The District Court correctly found Deputy Daly was entitled to judgment on both problems of the qualified immunity analysis, both that, the first being that Deputy Daly, on the facts, did not commit an unreasonable seizure of Deborah Arbuckle. And then the District Court went on to find there is no clearly established law, even if we grant the benefit of the doubt to the plaintiff on that one, there is no clearly established law that would have alerted Deputy Daly that shooting in those circumstances would have violated the Constitution. Counsel, why isn't the immediacy of the threat at the precise moment of the shooting a jury question in this case? Because the law, Your Honor, is that a law enforcement officer is entitled to use deadly force when a reasonable officer in their position would have probable cause to believe that the suspect presents an imminent threat to himself or another officer. And here, when we're talking about the actual, the fact that Johnson had gotten out of the way, that occurred a split second before the first shot was fired and after the decision to shoot had been made. But didn't that occur after your client looked to his left and saw no one there? That's not accurate. That's not, why is that not accurate? Because when Deputy Daly glanced to his left about eight seconds before the events occurred, Deputy Johnson was approaching the vehicle. He was in the zone of danger at that time and taking up the position that Deputy Daly wanted to go take by the vehicle. And the of Deputy Morano's car. He was exactly in the path where that Volkswagen passed. You're saying you can see that from the video? You sure can. Boy, you've got better eyes than I do. The snapshots are directly in Judge Crabtree's opinion. But not all of them, right? I mean, it seems like a real selective. Those are the ones that you're able to actually see what's there and you're able to see that and you can see right underneath his car, right underneath his gun, the passenger mirror. He can't be anywhere but next to the passenger door. He was, the undisputed facts clearly show he was directly in the path and his testimony was that's where he was prior to the vehicle starting to go in reverse. What about Daly's body cam? Daly's body cam shows what he was looking at at the time of those events. So they show him looking left, seeing Deputy Johnson approaching where he wants to go. He knows from having worked with him, and this is part of his testimony, that he was taking up felony stop position at the passenger door and that his location was directly in the path of where that car was backing up. Now what does his body camera show? It shows he glances to that left. He then focuses on the car, the backup lights, the brake lights come on, the backup lights come on, the engine starts revving, it starts moving, he yells stop, stop, and he shoots a six time, all of that occurring within a five second window. But you're not saying, or are you, that Daly knew that Johnson was crouched behind where he was passing your door? No. Daly believed that Johnson was in the path of the vehicle and in imminent danger of death or serious bodily injury at the time he decided to shoot. In point of fact, Johnson was able to get behind the vehicle and get out of the path of the vehicle. That was not known and could not have been known by Deputy Daly in that five second window. And it's only with the benefit of taking these videos and slowing them down to frame by frame that we're able to determine exactly when Deputy Johnson was able to get behind the car. Isn't that a problem though? Because, you know, I guess it's from the prism in which you look at it, but from the video to me, from Daly's body cam, it looks like you can see that Johnson is there somewhere. There are scenarios that he's in back of Marrero's vehicle. And so, you know, the question is, was Johnson really, would someone other than a plainly All he knows is Johnson is out of his vehicle and he's somewhere behind Marrero's vehicle. That's not accurate. He knows that he's approaching the passenger door of Marrero's car. And you can see all that from his momentary glance and sees him, you know, he keeps his eyes planted and we can see that from his body cam, planted enough. That seems quite a stretch to say, okay, I can see that he's taken two steps toward Marrero's vehicle. He can't see anything. He was walking forward and took up a position where Daly himself wanted to go and Daly changed his direction. And you can see all of that from the video? No, I'm not saying you can see that from the video. I'm saying that we know that from the testimony, both of Deputy Johnson and Deputy Daly, that that was what they do, that they both knew that's what they wanted to do was to do the felonies car stack. And Deputy Daly changed his line of direction because he knew the position to which Johnson was going to take. So he knew where he would, he knew where Johnson intended to go. The facts show that is exactly where Johnson did go and that Deputy Daly reasonably believed that that's where Johnson was when the vehicle started moving. And those are the facts that the district court used to decide that Deputy Daly's decision to shoot were reasonable under the circumstances and those are objectively reasonable, not just based on Deputy Daly's perceptions, but that a reasonable officer in Deputy Daly's position would believe that another officer was an imminent harm. And thus the decision on the first prong of the qualified immunity argument is that it was a reasonable seizure under the Fourth Amendment and that Deputy Daly was entitled to judgment on that basis alone. Judge Crabtree went on then to decide the qualified immunity prong, which is, is there any case out there? And the case that is now relied upon by the plaintiff, Cordova and Rivas, particularly Rivas, are not apropos because those are cases in which a reasonable jury could conclude that the officer at the time they shot knew nobody was in danger any longer and now you're shooting a fleeing felon. And that's not this case. This is a case opposite of Rivas where Deputy Daly, at the time he used force, reasonably believed that Deputy Johnson was an imminent harm. Didn't he actually believe that, well, that he wasn't sure he was safe? Not that he was actually an imminent, there was an imminent threat. No, he knew that Deputy Johnson was in the path of that vehicle and whether he had gotten out of the way or not, he had no way of knowing. He believed Deputy Johnson was about to be killed and that's why he fired. So in sum, on both prongs of the analysis, whether the use of force was justified as a matter of law and on the question of whether it's clearly established to the contrary, there's certainly no case that would have lured Deputy Daly that shooting under those circumstances would have violated the Constitution. It is the position of the appellee that you need not reach that decision but that you can affirm the district court on the first prong of the qualified immunity argument. But most certainly you can affirm the district court on the second prong. Absent further questions, I submit the case for decision by the court.